IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EDWARD G. APPEL, ESQ.,

    Plaintiff,

  v.

THOMAS G. MASCIOCCHI, ESQ.,
et al.,

    Defendants.

HON. JEROME B. SIMANDLE

CIVIL NO. 08-1303

**OPINION**

APPEARANCES:

Gregory A. Lomax, Esq.
WOLFBLOCK, LLP
1940 Route 70 East
Suite 200
Cherry Hill, NJ 08003
 Attorney for Plaintiff

Francis Joseph Masciocchi, Esq.
MASCIOCCHI & MASCIOCCHI, LLC
1326 Central Avenue
Glendora, NJ 08029
 -and-
Bruce J. Chasan, Esq.
CAESAR, RIVISE, BERNSTEIN COHEN & POKOTILOW
1635 Market St.
11th Floor
Philadelphia, PA 19103
 Attorneys for Defendants

**Simandle, District Judge:**

**I. INTRODUCTION**

 The matter is before the Court on the motion to dismiss this action for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), or to abstain from hearing the action pursuant to Colorado River Water Conservation Dist. v. United States, 424

U.S. 800 (1976), <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and the
Anti-Injunction Act, 28 U.S.C. § 2283.  On May 13, 2008, the
Court heard oral argument and reserved decision.  Because
Plaintiff's Complaint states a claim under the Lanham Act, 15
U.S.C. § 1125(a)(1), because there is no parallel state
proceeding, and because a final decision in this action would not
functionally enjoin pending state proceedings, the Court shall
deny the motion to dismiss or abstain.

**II.  BACKGROUND**

This matter was commenced in this Court on March 14, 2008
with a Complaint and an Order to Show Cause why temporary
restraints should not issue.  A show cause hearing was commenced
on March 19, 2008, but adjourned when the parties voluntarily
entered into an agreement for temporary restraints pending a
preliminary injunction hearing then scheduled for May 1, 2008.
The agreement was placed on the record.

Subsequently, Defendants' counsel withdrew from the case and
Defendants requested more time to brief and be heard on the
motion for preliminary injunction.  The Court granted those
requests and reset the preliminary injunction hearing for May 15,
2008.  The parties have since further consented to postponing the
preliminary injunction hearing pending the outcome of this motion
to dismiss.

On April 21, 2008 Defendants moved this Court to dismiss

this action for lack of jurisdiction and to abstain from hearing this case pursuant to Colorado River.  On April 25, 2008, Defendants filed a "supplemental" brief in further support of their motion to dismiss, arguing that the Anti-Injunction Act and Younger v. Harris also compelled dismissal of this case.  Then on April 30, 2008 Defendants moved to vacate the agreement for temporary restraints that they had entered into on March 19. Plaintiff timely opposed these motions and Defendants replied.

Apparently, on January 1, 2008, Defendants had filed an action in New Jersey state court to dissolve the company known as Courtlist, pursuant to N.J. Stat. Ann. § 14A:12-7(b), but did not serve Plaintiff Appel with process in that matter until April 24, 2008, after the temporary restraints had been entered in this case and after the motion to dismiss was filed.  Thus, at the time the motion to dismiss was filed, there was no other pending state action for which process had been served.

In addition, Plaintiff had previously filed an action in Camden County Superior Court on January 17, 2008 that was substantially similar to this action, except that it contained no federal law claims.  That action was voluntarily dismissed by Plaintiff, without prejudice, when the parties appeared to reach a settlement, on March 14, 2008 (Compl. ¶ 84), just five days before Plaintiff commenced this federal action.

3

## III. MOTION TO DISMISS

### A.   Standard

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, slip op. at 17.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, _____ U.S. ____ , 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do." <u>Twombly</u>, ____ U.S. ____ , 127 S. Ct. at 1964-1965
(quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint
> with enough factual matter (taken as true) to
> suggest" the required element. [<u>Twombly</u>, 127
> S. Ct. at 1965 n.3.]  This "does not impose a
> probability requirement at the pleading
> stage," but instead "simply calls for enough
> facts to raise a reasonable expectation that
> discovery will reveal evidence of" the
> necessary element.  <u>Id.</u>

<u>Phillips</u>, 515 F.3d at 234.

Only the allegations in the complaint, matters of public
record, orders, and exhibits attached to the complaint are taken
into consideration.  <u>Chester County Intermediate Unit v.
Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990).

**B.   Application to Lanham Act Claim**

    1.   <u>Parties' Arguments</u>

Defendants argue that the Court should dismiss Plaintiff's
only federal claim, pursuant to the Lanham Act, for failure to
state a claim on which relief can be granted and to then decline
to exercise supplemental jurisdiction over the state claims and
dismiss the Complaint in its entirety.

Defendants assert that the Lanham Act provides for two
separate causes of action, generally: (1) false or confusing
designation of origin, sponsorship or approval, 15 U.S.C. §

5

1125(a)(1)(A), and (2) false or misleading advertisement or representation, 15 U.S.C. § 1125(a)(1)(B).  Defendants argue that the "fraud" element of a Lanham Act claim must be pled with more particularity than Rule 8 requires, but not with as much particularity as Rule 9 requires.  Defendants claim that this heightened particularity is necessary to provide Lanham Act defendants with sufficiently detailed allegations regarding alleged falsehoods to permit the possibility of proper defenses.

Defendants allege that the Complaint is insufficient because it does not allege the specific factual bases for how Defendants misrepresented to third parties that Docketlist and Courtlist are the same company or that Docketlist is a successor to Courtlist. Defendants point out, however, that the Complaint specifically alleges that Defendants sent a January 2 marketing letter identifying Docketlist as "our new company" and noting that "[w]ith Docketlist you will be starting fresh and anew."  (Def. 1Br. at 17) (quoting Compl. ¶ 55-56).

Defendants further argue that the Lanham Act claims for "palming off" Docketlist as Courtlist must fail because the two companies were never operational at the same time. (Def. 1Br. at 19.)  Defendants dispute the implications of other specific allegations in the Complaint, such as whether Docketlist misrepresented that it was a successor to Courtlist and whether someone would actually be confused by the similarities between

6

the two websites.

Finally, Defendants allege that Plaintiff has failed to allege how any act allegedly done in violation of the Lanham Act was likely to cause any injury to Plaintiff.  Defendants base their argument on the allegations that Courtlist was shut down on December 31, 2007 and that Docketlist did not commence operation until January 2, 2008.  (Def. 1Br. at 23.)  Thus, while Defendants concede that the Complaint alleges that Plaintiff suffered injuries, Defendants argue that these injuries were allegedly cased by the shutdown of Courtlist and diversion of its assets, not by unfair competition with Docketlist within the meaning of the Lanham Act.  (Id.)

Plaintiff opposes dismissal of the Lanham Act claim. Plaintiff argues that the Lanham Act provides a federal claim for misrepresentation in commerce as to affiliation, origin or sponsorship – a "passing off" claim; a federal claim for misrepresentations in commerce as to the nature and characteristics of plaintiffs' or defendants' products, services or commercial activities – a false advertising claim; and a general unfair competition cause of action, coterminous with New Jersey state law claims for unfair competition.  Plaintiff further argues that Defendants have selectively quoted from the Complaint to create the misconception of a lack of specificity in the pleadings.

7

First, Plaintiff argues that the Complaint alleges "a prototypical false designation" claim.  (Pl. Br. at 13) (citing AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994)).  Plaintiff points to paragraphs 55-56 and 60-66 of the Complaint to show that he has adequately alleged the ways Defendants appropriated Courtlist's assets and misrepresented to the consuming public that Docketlist was a successor to Courtlist, in violation of the false origin or "passing off" proscriptions in the Lanham Act.

Plaintiff then argues that the Complaint adequately alleges a Lanham Act claim for false advertising, pursuant to Warner-Lambert Co. V. Breathasure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000).  (Pl. Br. at 16.)  Plaintiff identifies two false or misleading statements Defendants allegedly made on their website that were alleged in the Complaint: (1) that Docketlist had been in business since 2003 and (2) the testimonials for Courtlist that Docketlist posted on its own website as if the customers were discussing the services offered by Docketlist.  (Id. at 16-17) (citing Compl. ¶¶ 64, 60.)

Next Plaintiff argues that the Lanham Act protects against unfair competition and that such claims are nearly identical to claims under New Jersey's Unfair Competition Act, N.J. Stat. Ann. § 56:4-1, and New Jersey common law.  Plaintiff further argues that the purpose of these laws is to promote higher ethical

standards in business and prohibit commercial competitors from unfairly capitalizing on the goodwill of another or deceptively pirating the trade of another.

Finally, Plaintiff argues that Defendants' causation arguments have no merit and that the Complaint "plainly and succinctly" explains how Defendants' conduct caused him harm. Plaintiff argues that it is possible to state a Lanham Act claim even though the companies were not in operation at the same time because Plaintiff has alleged that the Defendants' unlawful conduct caused the shutdown of Courtlist.

### 2. Complaint States Lanham Act Claim

Section 43(a) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is

9

likely to be damaged by such act.

15 U.S.C. § 1125(a).

A "passing off" claim under 15 U.S.C. § 1125(a)(1) is similar to a trademark infringement claim.

> The central inquiry here is "whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers." Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1010 (5th Cir.), cert. denied, 423 U.S. 868 (1975). The factors relevant to this inquiry are essentially the same as those relevant in determining trademark infringement, but the scope of inquiry into similarity of design is considerably broader, see id. The touchstone under § 1125 is not similarity of the registered mark but similarity in the overall trade dress of the products . . . .

Sun-Fun Products, Inc. v. Suntan Research & Development, Inc., 656 F.2d 186, 192 (5th Cir. 1981). For such claims, the plaintiff must allege "(1) that the defendant uses a false designation of origin; (2) that such use of a false designation of origin occurs in interstate commerce in connection with goods or services; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of the plaintiff's goods and services by another person; and (4) that the plaintiff has been or is likely to be damaged." Parker v. Google, 242 Fed. Appx. 833, 838 (3d Cir. 2007) (citing

AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d at 1428).

As AT&T v. Winback made clear, claims under this section need

only allege that consumers were likely to be confused, not that

they were actually confused.  AT&T v. Winback & Conserve Program,

42 F.3d at 1443-1444.

Plaintiff also alleges a false representation claim under 15

U.S.C. § 1125(a)(1)(B), which has slightly different essential

elements.  "To establish a Lanham Act claim based on a false or

misleading representation of a product," under 15 U.S.C. §

1125(a)(1)(B), "the plaintiff must show:

> 1) that the defendant has made false or
> misleading statements as to his own product
> [or another's];
>
> 2) that there is actual deception or at least
> a tendency to deceive a substantial portion
> of the intended audience;
>
> 3) that the deception is material in that it
> is likely to influence purchasing decisions;
>
> 4) that the advertised goods traveled in
> interstate commerce; and
>
> 5) that there is a likelihood of injury to
> the plaintiff in terms of declining sales,
> loss of good will, etc."

Warner-Lambert Co., 204 F.3d at 91-92 (quoting Johnson &

Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer

Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994)) (alteration in

original).

It appears clear on the face of the Complaint that Plaintiff

11

has adequately alleged all necessary elements of such Lanham Act passing off and false advertising claims.  (See Compl. ¶¶ 55-66.) First, Plaintiff alleges how Defendant represented to the public, through its website and solicitation letter, that Docketlist was a successor to Courtlist and that Docketlist had been in business longer than it had been, thus indicating that the origin of the services they were to receive were the same as the origin of the services they had previously received from Courtlist; that this was actual deception intentionally done to convince Courtlist's clients that Docketlist was its successor; that this was likely to and did influence purchasing decisions and confusion about the origin of the services; and that this was done through the mails and on the internet, i.e., in the flow of interstate commerce; and that in making such false statements, Defendants caused Courtlist to lose the good will and business of its own clients as well as monetary damages.[1]

Defendants allege that the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 25 (2003) forecloses Plaintiff's passing off claim. In Dastar, the issue was "whether § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prevents the unaccredited copying of a work." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 25

---

[1]  These facts are alleged with sufficient particularity to meet even the heightened pleading standards of Fed. R. Civ. P. 9, and easily meet the standards of Fed. R. Civ. P. 8(a).

(2003).  In Dastar, "[t]he gravamen of respondents' claim is
that, in marketing and selling [defendant's television series] as
its own product without acknowledging its nearly wholesale
reliance on the [plaintiff's] television series, Dastar has made
a 'false designation of origin, false or misleading description
of fact, or false or misleading representation of fact, which . .
. is likely to cause confusion . . . as to the origin . . . of
his or her goods.'"  Id. at 31.  That is a "reverse passing off
claim."

> Passing off (or palming off, as it is
> sometimes called) occurs when a producer
> misrepresents his own goods or services as
> someone else's. See, e.g., O. & W. Thum Co.
> v. Dickinson, 245 F. 609, 621 (CA6 1917).
> "Reverse passing off," as its name implies,
> is the opposite: The producer misrepresents
> someone else's goods or services as his own.
> Williams v. Curtiss-Wright Corp., 691 F.2d
> 168, 172 (CA3 1982).

Id. at 28 n.1.

In this case, however, the claim is a passing off claim.
Plaintiff is not arguing that the defendants are selling the
plaintiff's product as their own, but that the defendants are
falsely selling their own product as if it were Plaintiff's; that
is, Defendants are falsely designating Plaintiff as the origin of
Defendants' product.  According to Dastar, the "origin" of goods
described in the Lanham Act "refers to the producer of the
tangible goods that are offered for sale, and not to the author

of any idea, concept, or communication embodied in those goods."[2]
Id. at 37.  Thus, under Dastar, Plaintiff cannot make a Lanham
Act claim merely because Defendants have used Plaintiff's ideas
to form a new business.  Indeed, Plaintiff does not appear to be
attempting such a claim.  Rather, it is the fact that Defendants
have indeed created a new service, yet have communicated,
allegedly, that it has the same "origin" as the old service, that
Plaintiff finds objectionable.

Accordingly, the motion to dismiss the Lanham Act claim
pursuant to 12(b)(6) shall be denied.  The Court shall also
continue to exercise supplemental jurisdiction over the related
state law claims.

## IV.   ABSTENTION

### A.   *Colorado River* Abstention

#### 1.   Parties' Arguments

Defendants ask this Court, in its discretion, to abstain
from hearing this matter.  Defendants' primary argument in the
original brief in support of their motion to dismiss was that the
Court should abstain from hearing this matter under the Colorado
River doctrine. (Def. 1Br. at 4-10.)  Relying on the fact that
Plaintiff Appel had originally filed an action in state court,
which he voluntarily dismissed when the parties had tentatively

---

[2]  Dastar referred to the origin of goods because goods were
at issue in that case; this case involves "services," which are
also covered by the Lanham Act.  15 U.S.C. § 1125(a).

settled the matter, Defendants argued that this case presents the "exceptional circumstances" that justify dismissal of the Complaint on abstention grounds.

Plaintiff argues that the <u>Colorado River</u> abstention doctrine does not apply because there is no parallel proceeding. Plaintiff argues that the action originally filed by Plaintiff in state court cannot be a parallel action because it is no longer pending and <u>Colorado River</u> only applies when there is contemporaneous state and federal litigation. (Pl. Br. at 26.) Plaintiff argues that the dissolution proceeding cannot be a parallel proceeding because there is no identity of claims or parties.  Plaintiff points out that Shainline and Docketlist are not and should not be parties to the dissolution action because they were not shareholders of Courtlist, the entity to be dissolved.

Further, Plaintiff argues, that even if there was a parallel proceeding, the <u>Colorado River</u> factors weigh against abstention.

   2.   *<u>Colorado River</u> Abstention is Not Appropriate*

As the Third Circuit has said,

> It is axiomatic that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress. <u>Colorado River</u>, 424 U.S. at 817. [. . .]  This principle is no less true in cases where . . . there is a parallel litigation in a state court. "The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal

court having jurisdiction . . . ." [Id.]

Nevertheless, in Colorado River, the Supreme Court recognized that there are certain extremely limited circumstances in which a federal court may defer to pending state court proceedings based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817.   It emphasized that "abdication of the obligation to decide cases can be justified . . . only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. at 813.

The Court then set forth several factors which can support this type of abstention, after cautioning that no one factor is determinative and "only the clearest of justifications will warrant dismissal." Id. at 818-19.   Those factors included: (1) whether the state court assumed in rem jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. Id. at 818.

Ryan v. Johnson, 115 F.3d 193, 195-96 (3d Cir. 1997).  See also

IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d

298, 307 n.4 (3d Cir. 2006) (listing factors).

"The threshold question in this analysis is whether there is

a parallel state proceeding." Yang v. Tsui, 416 F.3d 199, 205

(3d Cir. 2005).  It is clear that the "narrow" Colorado River

abstention doctrine applies only to "simultaneous litigation" in

state and federal courts.  Spring City Corp. v. American Bldgs.

Co., 193 F.3d 165, 172 (3d Cir. 1999).  "The threshold

requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding."  IFC Interconsult, 438 F.3d at 306.

> Unlike traditional abstention grounds "which rest on considerations of proper constitutional adjudication or federal-state relations," Colorado River abstention "is aimed at avoiding duplicative litigation and is premised on considerations which concern the efficient administration of judicial resources and the comprehensive disposition of cases." NYLife Distributors, Inc. v. Adherence Group, Inc., 72 F.3d 371, 376 (3d Cir.1995), cert. denied, 517 U.S. 1209 (1996); see Trent v. Dial Medical of Florida, Inc., 33 F.3d 217, 223 (3d Cir.1994). Although any form of abstention is the exception rather than the rule, "Colorado River abstention is even rarer." Id. at 223.

> The Third Circuit has described the exceptional circumstances which may justify abstention pursuant to the Colorado River doctrine:

>> In order for Colorado River abstention to be appropriate, there must be parallel state and federal litigations that are truly duplicative. When the two cases fit this requirement, the district court, in its discretion, may abstain only if the several Colorado River factors clearly weigh in favor of abstention because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them.

>> Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 890 (3d Cir. 1997) (citations and quotations omitted).

Bryant v. New Jersey Dept. of Transp., 1 F. Supp. 2d 426, 436 -37
(D.N.J. 1998).

In this case, there is no parallel state proceeding, and
therefore the Court cannot abstain from hearing this action under
the Colorado River doctrine.  "For judicial proceedings to be
parallel, there must be identities of parties, claims, and time."
IFC Interconsult, 438 F.3d at 306.  The only action that could
have been parallel in terms of the claims and parties was the
action initially filed by Plaintiff in Superior Court ("the
Camden Law Division action"), but that action is no longer
pending.  The corporate dissolution action filed by Defendant is
currently pending, but does not involve the similar claims or the
same parties as this action.  Therefore, there is no parallel
action and Colorado River cannot apply.

The Camden Law Division action is not a parallel action
regardless of how similar the claims were because it is not
currently pending.  This "identity of time" is mandatory,
regardless of how similar the claims were in the voluntarily
dismissed action.  Id.  "[A]bstention is . . . inapplicable
under Colorado River and Younger] because it provides for federal
deference to ongoing, not completed, parallel state proceedings."
Bass v. Butler, 258 F.3d 176, 179 (3d Cir. 2001).  This makes
sense, of course, because there is no state action with which a
federal action might interfere if the state action is no longer

pending.  Thus, the Court shall not abstain on account of a previously-filed state action that is no longer pending.

The state court action that is pending, the dissolution action, does not qualify as a parallel action because it contains none of the claims asserted by Plaintiff in this action and excludes all defendants Shainline and Docketlist, which have no interest in Courtlist, the company to be dissolved.  "Parallel cases involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'" Yang v. Tsui, 416 F.3d 199, 205 n.5 (3d Cir. 2005) (quoting Timoney v. Upper Merion Twp., 66 Fed. Appx. 403, 405 (3d Cir. 2003)). Because "the claims being adjudicated and the issues being analyzed by the state and federal courts in this case would be different[,] Colorado River abstention is not appropriate here." Id.

The mere possibility that the claims asserted in this action could also be asserted in state court actions does not permit this Court to refrain from exercising its concurrent jurisdiction over this case.  Abstention is permitted only in exceptional circumstances. Colorado River, 424 U.S. at 818.  "The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment . . . ." University of Md. v. Peat Marwick Main & Co., 923 F.2d 265, 275-76 (3d Cir. 1991).  The

19

Third Circuit has repeatedly "reiterate[d] that federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 173 (3d Cir. 1999) (quoting Colorado River, 424 U.S. at 817).  The Court cannot abstain from hearing this action.

    **B.**   **Younger Abstention**

       1.  <u>Parties' Arguments</u>

In their supplemental brief, Defendants argue that the dissolution complaint merits this Court's abstention under Younger because that action is an ongoing state proceeding that implicates important state interests – the dissolution of a state-chartered corporation – and it provides Plaintiff Appel adequate opportunity to adjudicate his federal claims because federal courts do not have exclusive jurisdiction over Lanham Act claims.  Defendants further argue that the dissolution action was not filed in bad faith or to harass so that the exceptions to Younger abstention do not apply.

Plaintiff argues that the Younger doctrine does not apply because this Court is not being asked to enjoin a parallel state proceeding, because the dissolution action was filed privately, not by the State of New Jersey, and because there is no threat of interference with state court orders or judgments.  Further, Plaintiff points out that Defendants have cited no authority for

their assertion that an action under state corporate law by one private party against another constitutes an important state interest within the meaning of the Younger abstention doctrine.

2.   *Younger Abstention Is Not Appropriate*

A district court has additional discretion to abstain from hearing matters under the Younger abstention doctrine.  See Younger v. Harris, 401 U.S. 37 (1971).

> Although the general rule is that the pendency of a state court proceeding is not a reason for a federal court to decline to exercise jurisdiction established by Congress, an exception to that rule is Younger abstention. Younger, 401 U.S. 37 (1971), established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding. This principle has been extended to civil proceedings and state administrative proceedings. Three requirements must be met before Younger abstention is appropriate: (1) there must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings must implicate important state interests, and (3) the state proceedings must afford an adequate opportunity to raise the claims.

Yang v. Tsui, 416 F.3d at 201-02 (citations omitted).  The boundaries for the application of the doctrine remain somewhat elusive.  But from its inception, it has been clear that Younger abstention only comes into play when an important state interest is implicated," Anthony v. Council, 316 F.3d 412, 418 (3d Cir. 2003), such as the interest in enforcing child support

21

obligations, id., or in prosecuting crimes, Younger.

Although Defendants have cited no authority to this Court indicating that a corporate dissolution action filed by private parties is the type of proceeding to which the Younger doctrine applies, the Court shall assume for purposes of this discussion, that it is such a proceeding.

Nevertheless, Younger does not permit this Court to abstain on account of the pendency of the corporate dissolution action because that action does not satisfy the first prong of the Younger test:  there is no ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere. "The analysis of parallel proceedings is very similar to the first prong of the Younger test."  Yang v. Tsui, 416 F.3d at 205 n.5.  Because the state court does not have before it the claims being raised in this action, and because these claims were never litigated or decided in state court, there can be no interference under the first prong of Younger. Id. at 203.  Accordingly, the Court shall deny the motion to abstain under Younger.

**C.   Anti-Injunction Act**

1.   Parties' Arguments

In the supplemental brief, Defendants argue that the Court must dismiss the suit pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283 ("the Act").  Defendants argue that the Act applies

when a Court of the United States grants an injunction that
effectively stays proceedings in a state court. (Def. Supp. Br.
at 6.)  Defendants argue that Masciocchi, a 50% shareholder of
Courtlist, invoked the jurisdiction of the Camden County Superior
Court in his Dissolution Complaint, which seeks to dissolve the
corporation under New Jersey law and to equitably distribute the
corporate assets.  Defendants argue that if the Court issued the
injunction requested by Appel, it would be interfering with the
jurisdiction of the Superior Court.  (Id. at 7.)  Defendants
further argue that the exceptions to the Act do not apply to the
facts of this case: there is no exception expressly authorized by
Congress for Lanham Act claims and the injunction would not be
necessary to aid the federal court's jurisdiction or to protect
and effectuate its judgments.  (Id. at 7-8.)

Plaintiff argues that the Anti-Injunction Act does not apply
to this matter.  Plaintiff argues that although the Court cannot
grant an injunction to stay state court proceedings, it can
proceed with federal litigation of a parallel action.  Further,
Plaintiff argues, other abstention doctrines weigh in favor of
permitting parallel litigation and the Act does not purport to
overrule them.

2.  <u>The Anti-Injunction Act Does Not Deprive This Court of
Jurisdiction</u>

This Court has jurisdiction over this action pursuant to 28
U.S.C. §§ 1331 and 1367.  However, Defendants argue that the

23

Court cannot proceed because it will run headlong into the wall that separates the spheres of power in federal and state courts, in violation of the Anti-Injunction Act.

The Anti-Injunction Act, 28 U.S.C. § 2283, provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

There is a currently-pending corporate dissolution action that has not proceeded past the stage of service of the Complaint.  Under the Anti-Injunction Act, this Court can not enjoin that action, enjoin the parties from pursuing the action, nor issue any declaratory or injunctive relief that would functionally enjoin that action.

> The Anti-Injunction Act is "an absolute prohibition against enjoining State Court proceedings, unless the injunction falls within one of three specifically defined exceptions." Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286 (1970); 1975 Salaried Retirement Plan v. Nobers, 968 F.2d 401, 405 (3d Cir. 1992). This prohibition applies whether appellants seek to enjoin the parties to the action or the state court itself. See Atlantic Coast, 398 U.S. at 287; Nobers, 968 F.2d at 405. Moreover, these three exceptions are to be rigorously construed and "should not be enlarged by loose statutory construction." Atlantic Coast, 398 U.S. at 287, 90 S. Ct. at 1743. "[A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere

24

> with a protected federal right or invade an
> area preempted by federal law, even when the
> interference is unmistakably clear." Id. at
> 294.
>
> Finally, "any doubts as to the propriety of a
> federal injunction against state court
> proceedings should be resolved in favor of
> permitting the state court to proceed in an
> orderly fashion to finally determine the
> controversy." Id. at 297, 90 S. Ct. at 1748.

In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 134 F.3d

133, 144 (3d Cir. 1998).  There is no argument that any of the

exceptions to the Act apply here; thus, the Court cannot

interfere with the corporate dissolution action.

However, such interference is not the necessary result of

this litigation running its course.  This case requests more than

distribution of the corporate assets and determination of

shareholder rights.  Plaintiff is seeking monetary damages from

Defendants not only for Lanham Act violations (Count Four), as

described above, but also for state law claims of breach of

fiduciary duty (Count One) (against Masciocchi and Shainline);

unfair competition (Counts Five and Six); tortious interference

(Count Seven); breach of contract (Count Eight) (against

Shainline); breach of the covenant of good faith and fair dealing

(Count Nine) (against Shainline); conversion and misappropriation

(Count Ten); unjust enrichment (Count Eleven); civil conspiracy

(Count Twelve); and fraudulent conveyance (Count Thirteen).

Furthermore, two of the defendants in this case have no role in

the corporate dissolution action.

Because the litigation of this action does not necessarily interfere with the pending corporate dissolution action, the Court shall deny the motion to dismiss this action under the Anti-Injunction Act.  Defendants are free to argue, however, that particular relief may run afoul of the Act, for example, in their opposition to the pending motion for a preliminary injunction. The Anti-Injunction Act applies to federal courts throughout their proceedings, and this Court shall not interfere with the orderly procession of the corporate dissolution action.

## V.   CONCLUSION

Because Plaintiff has alleged facts with sufficient particularity to survive the motion to dismiss the Lanham Act claims, the Court shall deny the motion to dismiss for failure to state a claim.  The Court shall also deny the motion to decline supplemental jurisdiction over the related state law claims asserted in this action.

The Court shall also deny the motion to abstain from hearing this action pursuant to Colorado River, Younger, and the Anti-Injunction Act, for the reasons explained above and because Plaintiff can pursue his claims asserted in this action without this Court interfering with the pending corporate dissolution action.

Finally, the Court temporarily adjourned the hearing on the

26

motion for preliminary injunction pending the outcome of this
motion for summary judgment.  That hearing is hereby rescheduled
to Friday, June 20, 2008 at 2:30 P.M.  The defendants' motion to
vacate the interim settlement and the plaintiff's cross-motion
for contempt will also be heard at that time.  An accompanying
order shall be entered.


**June 4, 2008**                           **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           U.S. District Judge


27